**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

——————————————————————

——————————————————————   )
DANA TRANSPORT, INC.,                          )
DANA CONTAINER, INC.,                          )
INTERNATIONAL EQUIPMENT LOGISTICS,   )
INC., and                                      )
SUTTLES TRUCK LEASING, LLC,                    )
                                               )        Civil Action No. 04-2781
                          Plaintiffs,          )
                                               )        **OPINION**
                  v.                           )
                                               )
ABLECO FINANCE, LLC,                           )
                                               )
                          Defendant.           )
——————————————————————   )

**KATHARINE S. HAYDEN, U.S.D.J.**

Plaintiffs Dana Transport, Inc., Dana Container, Inc., International Equipment Logistics,

Inc. and Suttles Truck Leasing, LLC (collectively "plaintiffs") filed suit against Ableco Finance,

LLC ("defendant") seeking compensatory and punitive damages for alleged breach of contract,

breach of the implied covenant of good faith and fair dealing, and tortious interference with

economic opportunities.  Before the Court is defendant's motion to dismiss the complaint under

Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  For the reasons that

follow, defendant's motion is **granted in part** and **denied in part.**

I.      BACKGROUND

All the facts are taken from the complaint and they will be deemed true for purposes of

this Rule 12(b)(6) motion.

Plaintiffs' claims stem from a commercial loan involving a multi-million dollar financing

transaction.  Plaintiffs are general commodity and contract carriers, specializing in the transportation of bulk liquid materials.  (Amended Compl. ¶ 1.)  Defendant provides large asset-based loans.  (Id. ¶ 2.)  In March 2003, the parties began negotiations and defendant was made aware of plaintiffs' organization structure, including the fact that plaintiffs did not have a chief financial officer or a sophisticated financial reporting systems.  (Id. ¶¶ 6, 7.)

In May 2003, plaintiffs accepted a proposal from defendant for $60,000,000 in financing (the "Proposal").  (Id. ¶ 7.)  Plaintiffs gave defendant $125,000 as a deposit from which defendant could pay for various costs associated with due diligence.  (Id. ¶ 9; Exh. 1.)  The Proposal provided that defendant would undertake good faith efforts to determine whether certain funding conditions had been reasonably satisfied.  If they were, defendant would fund the loan in exchange for additional consideration to be furnished by plaintiffs.  (Id. ¶ 8; Exh. 1.)  The Proposal would expire if the financing proposal was not consummated within 90 days of the execution of the Proposal.  (Id.)

In June 2003, "the parties determined that the first part of the financing package to close would be for $15,000,000 for a one-year loan," with closing scheduled at the end of July 2003.  (Id. ¶ 11; Exh. 2.)  Plaintiffs assert that "[t]he change in scope of the initial financing had the effect of modifying certain aspects of the parties' earlier agreement insofar as it pertained to the first $15,000,000 to be funded," but "did not give defendant any reason to avoid its obligations to plaintiffs."  (Pl. Oppos. Br. at 1.)

Thereafter, in addition to performing due diligence for the May Proposal, the parties engaged in substantial efforts to close the $15,000,000 loan and plaintiffs gave defendant UCC-1 liens.  (Id. ¶ 12; Exh. 2; Exh. 3.)  Closing documents were prepared, including a financing

2

statement setting forth that plaintiffs would be required to comply with certain management and financial reporting requirements <u>after</u> the closing of the $15,000,000 loan.  (<u>Id.</u> ¶¶ 12, 13, 16, 18) (emphasis in complaint).

According to plaintiffs, they sufficiently satisfied the various conditions for funding so that before the end of July 2003, or shortly thereafter, defendant was required to fund the initial $15,000,000.  (<u>Id.</u> ¶ 14.)

The complaint alleges that even though the conditions for funding had been reasonably satisfied, and defendant knew of the importance to plaintiffs of closing the $15,000,000 loan on or about July 31, 2003, and defendant was obligated to act in good faith, on or about July 29, 2003, defendant abruptly advised plaintiffs that it would not fund the loan. (<u>Id.</u> ¶ 15.)  Defendant justified its action because plaintiffs did not have, in place, pre-closing, a chief financial officer and certain reporting systems.  (<u>Id.</u> ¶ 16.)  According to plaintiffs, defendant could not have believed these reasons to be valid because defendant knew of plaintiffs' financial management system at the time the parties entered into the agreement and never demanded  that plaintiffs' system be changed prior to closing.  (<u>Id.</u> ¶ 16.)

On May 10, 2004, plaintiffs filed a complaint against defendant in New Jersey Superior Court seeking compensatory and punitive damages.  On June 14, 2004, defendant removed the case to federal court based on diversity jurisdiction.

## II.    STANDARD OF REVIEW

A Rule 12(b)(6) motion may be granted "only if accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not

entitled to relief." Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183 (3d Cir. 2000) (citing Maio v. Aetna, Inc., 221 F.3d 472, 481 (3d Cir. 2000)).  A court is required to accept as true all factual allegations in the complaint but need not accept "unsupported conclusions and unwarranted inferences."  City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998) (citing Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997)).  Accordingly, grounds for dismissal are established "if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." Alexander v. Whitman, 114 F.3d 1392, 1397 (3d Cir. 1997).

## III.    DISCUSSION

Defendant argues that plaintiffs' claim for breach of contract and the implied covenant of good faith and fair dealing must be dismissed for failure to state a cause of action upon which relief may be granted.  Alternatively, defendant argues that plaintiffs' claim for damages associated with a loss of benefit of the bargain must be stricken.  Defendant argues that (1) the Proposal did not constitute a binding contract to fund a loan; (2) a number of conditions precedent were not satisfied; and (3) defendant did not act irresponsibly in utilizing plaintiffs' deposit monies to perform due diligence.  (Def. Moving Br. at 11.)  Defendant argues the implied covenant of good faith and fair dealing cannot be invoked to preclude defendant from exercising its express rights under the Proposal, including the right not to extend financing until certain enumerated conditions were satisfied.  (Def. Moving Br. at 20-21.)

According to defendant, plaintiffs are relying solely on the $15,000,000 bridge loan that was contemplated in a separate, one-page, undated and unsigned document.  Defendant contends

4

that this "undated and unsigned document . . . contemplated a different transaction than the original $60 million proposed financing." (Id. at 6.) Defendant relies on the language in the May Proposal stating: "THIS PROPOSAL LETTER IS NOT A COMMITMENT. . ." and the language providing that the Proposal would expire if certain conditions were not met. (Amended Compl., Exh. 1.)

Plaintiffs, on the other hand, argue that the $15,000,000 agreement contemplated that the conditions set forth in the May Proposal were to be completed *after* the closing, not before. Plaintiffs also contend that the May Proposal did not contemplate a separate loan commitment before funding but merely spoke of consummation of financing. Moreover, plaintiffs point out that the conduct of the parties indicates that the transaction would close without a formal commitment. (Pl. Oppos. Br. at 8.)

An implied covenant of good faith and fair dealing is present in all contracts governed by New Jersey law and requires that each party perform in good faith and that neither party will interfere with or destroy the other's reasonable expectations under the contract. Atlantic City Racing Ass'n v. Sonic Financial Corp., 90 F. Supp. 2d 497, 504 (D.N.J. 2000) (citing Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997)). Sons of Thunder, the seminal case in New Jersey on this issue, makes clear that "the obligation to perform in good faith exists in every contract, including those contracts that contain express and unambiguous provisions . . . ." 148 N.J. at 421. Plaintiffs claim that defendant breached its covenant of good faith and fair dealing by not acting reasonably in determining whether the conditions for funding were reasonably being met and by not funding the loan. (Amended Comp. ¶ 17.)

As the standard of review for motions to dismiss states, the court must accept all

allegations and their reasonable inferences as true.  <u>Lubrizol Corp. v. Exxon Corp.</u>, 929 F.2d 960, 962 (3d Cir. 1991).  The Court is unable to say at this stage of litigation that there is *no set of facts* that plaintiffs could prove entitling it to recover damages that flow directly from defendant's alleged conduct.  After discovery is completed the parties will be in a far better position to evaluate which claims are sufficiently supported to go before the factfinder. Right now, the Court's role is limited to determining merely whether the complaint alleges that a breach occurred and alleges facts in support.  The complaint makes such a claim and asserts facts that would support it.  As such, plaintiffs are entitled to proceed on the merits of their claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

More persuasive is defendant's argument that plaintiffs' claim for tortious interference with economic opportunities[1] must be dismissed because "it is nothing more than a recasted [sic] version of their breach of contract claim."  (Def. Moving. Br. at 22.)  The Third Circuit has recognized that the Supreme Court of New Jersey has identified the four elements of a prima facie case for tortious interference with economic opportunities: (1) a reasonable expectation of economic advantage to plaintiff, (2) interference done intentionally and with "malice," (3) causal connection between the interference and the loss of prospective gain, and (4) actual damages. <u>See</u> <u>Varrallo v. Hammond Inc.</u>, 94 F.3d 842, 848 (3d Cir. 1996) (quoting <u>Printing Mart-Morristown v. Sharp Electronics Corp.</u>, 116 N.J. 739, 751-52 (1989)).  The Third Circuit noted that "[a]lthough the New Jersey courts continue to read <u>Printing Mart</u> as setting out a four-part

_____

[1] Courts have used interchangeably the phrases "intentional interference with prospective economic relations," "tortious interference with prospective economic advantage" or "economic benefit," "intentional interference with a prospective contractual relationship," and the like.  <u>See</u> <u>Printing Mart-Morristown v. Sharp Electronics Corp.</u>, 116 N.J. 739, 744 (1989)

prima facie case . . . several panels of this court have read in a fifth element: defendant's

knowledge of plaintiff's expected advantage."  Varrallo, 94 F.3d at 848 n.9 (citations omitted).

"It is fundamental to a cause of action for tortious interference with a prospective

economic relationship that the claim be directed against defendants who are not parties to the

relationship."  Printing Mart, 116 N.J. at 752 (internal quotations omitted).  "Where a person

interferes with his or her own contract, the liability is governed by principles of contract law."

Id. at 753 (internal quotations omitted).

Plaintiffs' complaint states:

> [T]he actions of defendant in, at the last moment prior to closing, requiring
> plaintiffs to comply with conditions plaintiffs could not comply with prior to the
> projected closing date, which conditions were contrary to the conditions set forth
> in the draft financing agreement prepared by defendant, and contrary to the
> parties' understanding, were undertaken with a wanton and willful disregard of
> the harm defendant's actions would cause, and did in fact cause, to plaintiffs.
> Said actions were sufficiently egregious to amount to an intentional interference
> with plaintiffs' economic opportunities.

(Amended Compl. ¶ 18.)

Plaintiffs maintain that they advised defendant of the specific purposes for which they needed

financing, including the need for working capital, and so defendant knew of the harm it would

cause plaintiffs if it wrongfully refused to fund.  (Pl. Oppos. Br. at 17, citing Varrallo, 94 F.3d

842; Fineman v. Armstrong World Indus., 980 F.2d 171, 186 (3d Cir. 1992)).  Plaintiffs argue

that "[d]efendant wrongfully interfered with plaintiffs' opportunities by toying with plaintiffs

until the eve of closing and then arbitrarily reversing course and refusing to fund for reasons

defendant had agreed would not be conditions precedent to funding the $15,000,000 loan,"

establishing more than a breach of contract and constituting "an action of deliberate wrongdoing

on the part of defendant which caused plaintiffs to lose the opportunity to deal favorably with

third persons." (Pl. Oppos. Br. at 17.) Plaintiffs state these actions "caused plaintiffs not to be able to deal with third parties at an advantageous time, and thereby caused plaintiffs to sustain business losses." (Id. at 17-18.)

In arguing that the Court should dismiss plaintiffs' tortious interference claim, defendant relies on International Minerals and Mining Corp. v. Citicorp North America Inc., 736 F. Supp. 587, 597 (D.N.J. 1990), which stated that "an independent tort action is not cognizable where there is no duty owed to the plaintiff other than the duty arising out of the contract itself." Relying on that precedent, defendant argues that it owed plaintiffs no duty other than that which arose from the Proposal. (Def. Moving Br. at 26.) Plaintiffs respond that in defendant's effort to escape tort liability, defendant overlooks that under the present circumstances "defendant had a duty to plaintiffs not to act in the unreasonable manner in which defendant acted, knowing of the impact defendant's actions would have on third parties with whom plaintiffs were dealing." (Pl. Oppos. Br. at 18.)

Although plaintiffs' amended complaint and opposition brief discuss so called third parties, plaintiffs fail to identify the existence of any specific lost business opportunities – a necessary element of a tortious interference claim. See Varrallo, 94 F.3d at 848. Although plaintiffs argue that defendant "was aware" of these alleged lost business opportunities at the time it decided not to extend financing, plaintiffs must still demonstrate the existence of a lost business opportunity. See Varrallo, 94 F.3d at 848. In addition, plaintiffs have not set forth facts indicative of any malice on the part of defendant. Essentially, plaintiffs have failed to plead even the most basic elements of a claim for tortious interference. Accordingly, the Court dismisses plaintiffs' claim for tortious interference with economic opportunities.

Regarding damages, defendant argues that even if plaintiffs had a viable breach of contract claim, they have no ability to recover damages for an alleged loss of the benefit of their bargain.  (Def. Moving Br. at 17.)  Defendant admits that case-law on this subject is sparse in New Jersey and states that the Court should follow a line of cases from the New York federal courts addressing damages available in "preliminary agreement" cases.  (Id.)  This line of cases is not binding on the Court and at this stage of litigation, the Court will not rule on potential consequential damages.

Last, defendant argues that plaintiffs' claim for punitive damages should be dismissed. "Punitive or exemplary damages have traditionally been reserved for civil wrongs characterized as torts."  Sandler v. Lawn-A-Mat Chem. Equip., 141 N.J. Super. 437, 448-50 (App. Div. 1976). To recover punitive damages in common law, plaintiffs must demonstrate "actual malice," which is "intentional wrongdoing -- an evil-minded act or an act accompanied by a wanton and wilful disregard of the rights of another."  Id. (internal quotations omitted).  "In the absence of exceptional circumstances dictated by the nature of the relationship between the parties or the duty imposed upon the wrongdoer, the concept of punitive damages has not been permitted in litigation involving breach of a commercial contract."  Id. at 449.  "Where the essence of a cause of action is limited to a breach of such a contract, punitive damages are not appropriate regardless of the nature of the conduct constituting the breach."  Id.  Exceptions have been carved out where "the unusual relationship between the parties reflects a breach of trust beyond the mere breach of a commercial contract."  Id.

New Jersey's Punitive Damages Act (N.J.S.A. 2A:15-5.9 *et seq.*) follows these common law principles and dictates that punitive damages can only be awarded when defendant's acts or

omissions are "accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. . . ."  N.J.S.A. 2A:15-5.12.   Plaintiffs' opposition brief focuses on the fact that the complaint sounds in tort, not just in contract.  But as stated above, the Court finds that plaintiffs have not set forth a cognizable tort claim for tortious interference with economic opportunities.  Plaintiffs also argue that punitive damages are appropriate because "defendant wrongfully toyed with plaintiffs and caused them to sustain serious economic harm in the process."  (Pl. Oppos. Br. at 21.)  They claim that defendant's conduct was accompanied by a wanton and willful disregard of plaintiffs' rights because "defendant could have foreseen the harm its arbitrary reversal of position and refusal to fund would cause."  Id.  The Court finds that plaintiffs have produced no evidence of a "special relationship" between the parties other than a mere business relationship and will dismiss the claim for punitive damages.

The Court notes that in its reply brief, defendant breaks a cardinal rule of motion practice by raising an argument – the statute of frauds – that it failed to raise in its moving papers.  The purpose of the reply brief is to respond to the opposition brief or explain a position that the respondent has refuted.  Elizabethtown Water Co. v. Hartford Casualty Ins. Co., 998 F. Supp. 447, 458 (D.N.J. 1998).  Because the local rules do not permit sur-reply briefs, the non-moving party cannot respond to newly minted arguments contained in reply briefs.  Bayer AG & Bayer Corp. v. Schein Pharm., 129 F. Supp. 2d 705, 716 (D.N.J. 2001), aff'd 301 F.3d 1306 (3d Cir. 2002).  The arguments raised for the first time in defendant's reply brief will be disregarded for purposes of this motion.

10

**IV.** **CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss plaintiffs' complaint is **granted in part** and **denied in part**.

Dated:  August 17, 2005                              s/ Katharine S. Hayden
                                                                 Katharine S. Hayden, U.S.D.J.

11